In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3879

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ABDELHALEEM HASAN ABDELRAZIQ ASHQAR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 00978-3—**Amy J. St. Eve**, *Judge.*

ARGUED APRIL 7, 2009—DECIDED OCTOBER 2, 2009

Before POSNER, RIPPLE and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Abdelhaleem Hasan Abdelraziq Ashqar, a Palestinian, was convicted of obstruction of justice and criminal contempt after he refused to answer certain questions before a grand jury. Because the grand jury was investigating alleged terrorist acts of Hamas, the district court applied the terrorist enhancement in U.S.S.G. § 3A1.4. As a result, Ashqar's advisory Guideline sentence range on one count jumped from 24-30 months

to 210-262 months. The district court chose a point roughly in the middle of those extremes, 135 months' imprisonment.

While Ashqar challenges his conviction—arguing that the district court erred by refusing to give his proposed jury instruction defining "corruptly"—he devotes most of his brief on appeal to various challenges to his sentence. He argues that applying the terrorist enhancement violates his Sixth Amendment right to a jury trial because it increases his sentence based on judicially-found facts and on conduct for which he was acquitted. Alternatively, even if it was constitutional to apply the enhancement, he argues that the district court failed to make the necessary predicate findings: that Ashqar intended to promote a federal crime of terrorism, that the grand jury was investigating a specific terrorist act, and that this crime satisfied the definition of "federal crime of terrorism" in 18 U.S.C. § 2332b(g)(5). Finally, Ashqar contests the procedural reasonableness of his sentence by arguing that the district court neglected some of his arguments under 18 U.S.C. § 3553(a).

After a careful review of the transcripts and evidence, we find that the district court committed no errors. We therefore affirm Ashqar's conviction and sentence.

## I

For over ten years, the Federal Bureau of Investigation has been investigating Ashqar for his role as a communication and financial conduit for the terrorist organization

Hamas. That investigation included direct meetings between Ashqar and the FBI during the 1990s, wiretaps of Ashqar's telephone and fax machine, a search of Ashqar's home, and a review of Ashqar's financial records. In February 1998, a grand jury sitting in the Southern District of New York subpoenaed Ashqar to testify about his dealings with Hamas. Ashqar appeared but refused to answer questions. He was found in civil contempt and jailed, but he was released after he staged a hunger strike. The FBI's investigation into Hamas continued, and Ashqar was subpoenaed for a second time in June 2003 to appear before a grand jury sitting in the Northen District of Illinois. On June 25, 2003, Ashqar appeared before the grand jury and again refused to answer any questions about his dealings with Hamas. With few exceptions, Ashqar responded to any question posed by the Assistant U.S. Attorney ("AUSA") or the grand jury by reading a prepared statement that summarized his reasons for refusing to testify. The AUSA explained to Ashqar that the grand jury was investigating terrorist activities by Hamas, and he provided the citations for the statutes covering the crimes under investigation. He told Ashqar that his testimony was "critically important" to the grand jury's investigation and that Ashqar's refusal made the investigation "extremely difficult." Ashqar persisted in his refusal to talk, however, even after the court granted Ashqar immunity and ordered him to testify. At this point, the AUSA warned Ashqar that the government could prosecute him for criminal contempt and obstruction of justice. For these crimes, the attorney cautioned, Ashqar could receive maximum penalties of

ten years and life, respectively. Ashqar responded by re-reading his prepared statement. At this point, the court found Ashqar in civil contempt and the hearing ended.

As the AUSA had warned, the government charged Ashqar with criminal contempt, in violation of 18 U.S.C. § 401(3), and obstruction of justice, in violation of 18 U.S.C. § 1503, for his refusal to testify on June 25. It also charged Ashqar with a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), based on his two refusals to testify. At trial, Ashqar asked the district court to use his proposed jury instruction to define the term "corruptly" for purposes of § 1503, but the court instead read the Seventh Circuit Pattern Jury Instruction. On February 1, 2007, almost three months after the trial began, the jury found Ashqar guilty of obstruction and criminal contempt and acquitted him of racketeering.

The sentencing hearing lasted two days and included testimony by FBI Special Agent David Bray about the grand jury's investigation. According to Bray, the grand jury was investigating Hamas's support structure in the United States, especially the people offering financial, logistical, and communication assistance for Hamas's terrorist activities abroad. Bray named several of the people and terrorist acts under investigation, including the murder of a Palestinian peace advocate, Sari Nusseibah; the murder of three Israeli engineers; the kidnapping and murder of an Israeli soldier, Ilan Saldoan; and the April 2003 suicide bombing at a bar in Tel Aviv.

Based on Bray's testimony, the evidence at trial, and the transcript of Ashqar's testimony before the grand jury, the

district court applied the terrorism enhancement in U.S.S.G. § 3A1.4 to the range applicable to Ashqar's criminal contempt conviction. That enhancement popped the advisory Guideline range up to 210 to 262 months. After listening to argument from both parties, including a 90-minute allocution by Ashqar, and considering the factors in 18 U.S.C. § 3553(a), the district court imposed a total sentence of 135 months' imprisonment: 120 months for the obstruction count and 135 months for the criminal contempt count, to run concurrently. The district court considered the sentence a balance between the need for deterrence, the seriousness of the act, and Ashqar's lack of a violent history.

## II

### A

We first dispense with Ashqar's challenge to his conviction. His only complaint relates to the district court's refusal to use his definition of the term "corruptly." As long as the district court's chosen instructions represent a complete and correct statement of law, we will not disturb them. *United States v. Matthews*, 505 F.3d 698, 704 (7th Cir. 2007).

A person obstructs justice if she "corruptly. . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503. Ashqar asked the district court to define "corruptly" as follows:

> To act corruptly means to act knowingly and dishonestly with an improper motive or with an evil or

> wicked purpose with the specific intent to influence, obstruct, or impede the due administration of justice.

The court instead chose to use the Seventh Circuit Pattern Jury Instruction:

> To sustain each charge of obstruction of justice, the government must prove the following propositions:
>
> . . .
>
> Third, that the defendant's acts were done corruptly, that is, with the purpose of wrongfully impeding the due administration of justice.

As Ashqar acknowledges, we have already approved the instruction used by the district court. See *Matthews*, 505 F.3d at 704 (holding that "with the purpose of wrongfully impeding the due administration of justice" accurately defines "corruptly"); see also *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005) (noting that the word "corruptly" is "normally associated with *wrongful*, immoral, depraved, *or* evil" (emphasis added)). Moreover, we considered in *Matthews* the definition proposed by Ashqar—"with an improper motive or with an evil or wicked purpose"—and noted that it unnecessarily narrows the meaning of the term. *Matthews*, 505 F.3d at 706. Ashqar argues that *Matthews* is distinguishable: defendant Matthews was charged with perjury, obstruction of justice, and conspiracy, while Ashqar faced a charge of criminal contempt in addition to obstruction of justice. Without his definition, he argues, his two charges cover the same ground (and are thus multiplicitous), because both have as their crux his refusal to testify. While Ashqar

might be correct that the crimes in *Matthews* were slightly different, this is a distinction of no consequence.

Ashqar's argument draws on language from *United States v. Macari*, 453 F.3d 926 (7th Cir. 2006), that implies that something is done "corruptly" if the act had as its "natural and probable effect" the obstruction of justice. If this is enough to make the act corrupt, Ashqar argues, then the government has to prove only that Ashqar knowingly refused to testify—and that is exactly what it must show to prove criminal contempt. We are not persuaded. Even if we assume that Ashqar correctly interprets *Macari*, his argument ignores the fact that the district court's instruction was not addressing the nexus between the corrupt state of mind and the judicial proceeding. See *United States v. Aguilar*, 515 U.S. 593, 599 (1995). Instead, as *Aguilar* instructs, the court's instruction focused on the "intent to influence judicial or grand jury proceedings." *Id.* The crimes of obstruction of justice and criminal contempt each require proof of at least one different element: contempt requires proof that Ashqar disobeyed a court order, 18 U.S.C. § 401(3), while obstruction requires proof that Ashqar refused to testify with the purpose of wrongfully impeding justice. No multiplicity problem exists, and the district court's instruction fairly and accurately summarized the law. See *United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir. 1986).

## B

We now consider Ashqar's challenge to his sentence. Ashqar urges us to find that the district court's computa-

tion of his advisory Guideline sentence was incorrect, because the court should not have applied the terrorism enhancement in U.S.S.G. § 3A1.4. Doing so, he asserts, violated his Sixth Amendment right to a jury trial. Putting the Sixth Amendment to one side, he also argues that the district court procedurally erred by not finding all the required facts.

Ashqar argues that applying the terrorism enhancement violated his Sixth Amendment right to a jury trial in two ways: first, because in order to do so the court relied on conduct for which the jury acquitted him; and second, because this enhancement increased his potential sentencing range beyond the maximum that would have applied (or that would have been reasonable) based solely on the facts found by the jury.

The terrorism enhancement in the Guidelines applies if "the offense is a felony that involved, or was intended to promote, a federal crime of terrorism. . . ." U.S.S.G. § 3A1.4. An offense is a "federal crime of terrorism" if it "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" and violates one of the statutes listed in 18 U.S.C. § 2332b(g)(5)(B). See U.S.S.G. § 3A1.4 cmt. n.1 (defining a "federal crime of terrorism" by reference to § 2332b(g)(5)). The district court applied the enhancement to Ashqar based on Application Note 2, which says:

> For purposes of this guideline, an offense that in-
> volved . . . (B) obstructing an investigation of a federal
> crime of terrorism, shall be considered to have in-

volved, or to have been intended to promote, that federal crime of terrorism.

In applying the enhancement to Ashqar, the district court found that the "government has met its burden of proving, by a preponderance of the evidence at a minimum, that Dr. Ashqar intended to obstruct a terrorism investigation into Hamas activities." Ashqar argues that this finding contradicts the jury's verdict and thus violates his right to a jury trial, because the jury, by acquitting Ashqar of racketeering, found that Ashqar did not intend to promote Hamas's terrorist activities.

This argument fundamentally misunderstands the meaning of an acquittal. The jury found not that Ashqar was innocent, but that a reasonable doubt existed about his guilt. Because the district court found Ashqar's intent by a preponderance of the evidence, its finding does not contradict the jury's verdict. Sentencing courts routinely rely on acquitted conduct to increase a defendant's sentence, and this reliance does not violate the Sixth Amendment right to a jury. See *United States v. Watts*, 519 U.S. 148, 154 (1997) (holding that "a sentencing court may consider conduct of which a defendant has been acquitted"); *United States v. Price*, 418 F.3d 771 (7th Cir. 2005) (holding that *Watts* survives *United States v. Booker*, 543 U.S. 220 (2005)); see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information . . . which a court of the United States may receive and consider for purposes of imposing an appropriate sentence.").

Ashqar also argues, relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that the enhancement violated his

constitutional rights because it increased his sentence based on facts not proven to a jury beyond a reasonable doubt. We have rejected variants of this argument count-less times, and we do so again here. As the Supreme Court held in *Cunningham v. California*, 549 U.S. 270 (2007), "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by the jury or admitted by the defendant." 549 U.S. at 274-75. Even though the Court explicitly identified the relevant maximum as the statutory one, Ashqar maintains that the correct maximum is the maximum sentence an ap-pellate court would find reasonable based solely on the facts found by a jury. He then argues, more or less out of the blue, that without the additional finding of intent to promote terrorist acts, an appellate court would find a 135-month sentence unreasonable. The sentence, Ashqar reasons, is for that reason beyond what the judge "may impose *solely on the basis of the facts reflected in the jury verdict . . . .*" *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis in original). While this argument is not without its advocates, see *Rita v. United States*, 551 U.S. 338, 368-85 (2007) (Scalia, J., concurring), it is not the law. Imposing a higher sentence based on judicially-found facts does not violate the Sixth Amendment because "the judge could disregard the Guidelines and apply the same sentence . . . in the absence of the special facts . . . ." *Id.* at 354. So long as the Guidelines are advi-sory, the maximum a judge may impose is the *statutory* maximum. Here, there is no question the district court

knew the Guidelines are advisory; even though the range was 210-262 months, it imposed an overall sentence of 135 months. There is also no question the sentences are below the statutory maximum. The statutory maximum for obstruction is 10 years (120 months), and that is the sentence the district court chose for that count; the statutory maximum for criminal contempt is life, well above the 135 months Ashqar received on that count.

In the alternative, Ashqar argues that the district court erred procedurally because it neglected to find all the necessary facts before applying the enhancement. Ashqar identifies three allegedly missing factual findings: (1) that Ashqar intended to promote a federal crime of terrorism; (2) that the grand jury was investigating a specific crime of terrorism; and (3) that the crime was calculated to influence the actions of a government, as required under § 2332b(g)(5)(A).

The terrorism enhancement applies to obstruction of justice if "the district court finds that the purpose or intent of the defendant's substantive offense of conviction or relevant conduct was to promote a federal crime of terrorism as defined by § 2332b(g)(5)(B)." *United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005). Ashqar argues that the district court, instead of finding this required intent, interpreted Application Note 2 as if it imposed strict liability. If Ashqar obstructed justice, and the investigation dealt with a specific crime of terrorism, then (under the interpretation Ashqar attacks) the enhancement applies without any additional findings. He contends that this contradicts the text of § 3A1.4 by

eliminating the requirement that the offense must be "intended to promote" a federal crime of terrorism.

To the extent Note 2 could be read to say that a conviction for obstructing an investigation of a federal crime of terrorism "involves" a federal crime of terrorism, we can see that there might be problems. In *United States v. Parr*, 545 F.3d 491 (7th Cir. 2008), we noted that "[t]he term 'involve' as used in the guidelines is not quite so broad; it means 'to include.' . . . Thus, we have held that an offense 'involves' a federal crime of terrorism only if the crime of conviction is itself a federal crime of terrorism." *Id.* at 504 (citations omitted). Obstruction is not among the crimes listed as a possible federal crime of terrorism in the statute. See § 2332b(g)(5)(B). But the district court here did not rely on that part of Note 2, nor did it find that Ashqar's offense involved a federal crime of terrorism. It instead asked "whether or not the purpose or intent of [Ashqar's] offense of conviction . . . was intended to promote a federal crime of terrorism." This question tracks both the text of § 3A1.4 and *Arnaout*. Ashqar responds that even if the district court asked the right question, it gave an insufficient answer because it found not that Ashqar "intended to promote" a federal crime of terrorism, but that Ashqar "intended to obstruct a terrorism investigation into Hamas activities." The government counters that obstructing an investigation into a crime can be one way of promoting that crime. Thus, intent to obstruct an investigation is enough, at least where obstructing an investigation promotes the crime. We agree. Promoting a crime includes helping and encouraging that crime, and one way of furthering

a crime is to try to prevent the government from finding out about it. So long as the sentencing court finds that the defendant intended to obstruct an investigation into a federal crime of terrorism, as opposed to an investigation into more ordinary violations of the law, the court has found the intent required to apply § 3A1.4.

Ashqar also claims that the district court found neither that the grand jury was investigating a specific crime of terrorism nor that any crime under investigation met the requirement in 18 U.S.C. § 2332b(g)(5)(A). The record, however, does not support this assertion. The district court began its discussion of the terrorism enhancement by noting the definition of a federal crime of terrorism in § 2332b(g)(5), including the requirement that the crime be "calculated to influence or affect the conduct of government or to retaliate against government conduct." § 2332b(g)(5)(A). It then identified the evidence on which it relied in finding that the grand jury was investigating such a crime: Agent Bray's testimony at the sentencing hearing, the evidence at trial, and Ashqar's testimony before the grand jury. The court even quoted from the transcript and listed the specific crimes, accompanied by the statute number, that it found were under investigation. Perhaps the district court never said "and I find that these crimes were intended to influence a government" but such formality is hardly necessary. A sentencing court must "identify which enumerated federal crime of terrorism the defendant intended to promote, satisfy the elements of § 2332b(g)(5)(A), and support its conclusions by a preponderance of the evidence with facts from the record." *Arnaout*, 431 F.3d at

1002. The district court here identified the crimes under investigation, stated the proper definition of a federal crime of terrorism, and then found that the identified crimes qualified as federal crimes of terrorism. It supported these findings with specific facts in the record, and Ashqar does not argue that these findings are clearly erroneous. This was enough.

Finally, Ashqar contends that his sentence is procedurally unreasonable because the district court failed to consider several of his arguments, including the following: Ashqar's various criticisms of Application Note 2; the historical oppression of Palestine; his fear of Israel's retribution; the impropriety of the grand jury's inquiry into events prior to Hamas's designation as a terrorist organization; and the implications of Ashqar's acquittal of the racketeering charge.

"The sentencing judge should set forth enough to satisfy the appellate court that [s]he has considered the parties' arguments and has a reasoned basis for exercising [her] own legal decisionmaking authority." *Rita*, 551 U.S. at 356. Despite what Ashqar contends, *Rita* does not require the district court to state why it rejects every argument offered by the defendant. This case illustrates the reason for such a rule, as Ashqar's sentencing brief filled 175 pages. The district court diligently considered the § 3553(a) factors before sentencing Ashqar. The one factor the district court did not explicitly mention was § 3553(a)(6)—the need to avoid unwarranted sentence disparities among similar defendants. Ashqar brands this omission as unreasonable, while the gov-

ernment dismisses this argument as frivolous and therefore reasonably omitted. Since Ashqar offered as comparators only defendants not subject to the terrorism enhancement, we agree with the government's characterization. The district court considered the parties' arguments and explained in detail its reasons for choosing the sentences it did. That was all it had to do.

*  *  *

We AFFIRM the judgment of the district court.