# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50734

United States Court of Appeals
Fifth Circuit

**FILED**

February 13, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ABDULLAHI OMAR FIDSE, also known as Abdirahman LNU,
also known as Abdiraham Fidse, also known as Abdullaho Fidse,

Defendant – Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, COSTA, Circuit Judges, and ROSENTHAL, District Judge.*

PER CURIAM:

After arriving in the United States from Somalia, Abdullahi Omar Fidse lied to government officials in connection with his asylum application and during a subsequent investigation into his terrorism connections. As a result, Fidse pleaded guilty to two obstruction offenses. The issue on appeal is whether the district court properly applied a substantial sentencing enhancement that applies when "the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a).

---

* District Judge of the Southern District of Texas, sitting by designation.

No. 13-50734

**I.**

In December 2012, Fidse pleaded guilty to both counts of an indictment charging him with Conspiracy to Obstruct Proceedings Before a Department or Agency, in violation of 18 U.S.C. §§ 371 and 1505, and Conspiracy to Make False Statements, in violation of 18 U.S.C. §§ 371 and 1001. Fidse's legal troubles began four years earlier when he and his companion, Deka Abdalla Sheikh, arrived at the Hidalgo, Texas port of entry claiming that they were fleeing Somalia. Fidse, with corroboration provided by Sheikh, claimed that he had spent his entire life in Somalia until the Islamic Courts killed his father, which caused him to fear for his own life and flee. This story was false. Among other things, Fidse had spent significant time in Kenya and his father had died of natural causes. As a result of the false statements, Fidse was denied asylum, ordered deported to Somalia, and charged with conspiring to obstruct asylum proceedings because he coordinated the false testimony with Sheikh.

It turns out that not only was Fidse lying about being persecuted by militant Islamic forces in East Africa, but he actually had ties to one of the groups engaging in that persecution—al Shabaab. The FBI investigation into those connections, which is discussed in more detail below, started two months before the order of deportation issued in Fidse's immigration case. Lies that Fidse and Sheikh told when interviewed by the FBI in connection with that investigation are the basis for his second conviction.

The presentence investigation report (PSR) calculated Fidse's sentence by grouping the two offenses and using the guideline for obstruction of justice. The PSR applied the terrorism enhancement under United States

2

No. 13-50734

Sentencing Guidelines § 3A1.4.[1]  That enhancement yielded a guidelines range of 292–365 months.  Without the enhancement, Fidse's guidelines range would have been 46–57 months.  The 60-month statutory maximums for both of his offenses limited the effect of this vast increase in the guidelines range, resulting in an effective range of 120 months.

The district court held a lengthy sentencing hearing over two days at which the government offered evidence in support of the terrorism enhancement.  Mark Wagoner, an FBI special agent specializing in East African terrorist groups who worked on Fidse's case, testified about the history of al Shabaab.  He explained that following the chaos of the Somali Civil War, Islamic Courts were convened to handle criminal complaints and other matters; forces aligned with the Islamic Courts eventually invaded Somalia's capital.  In response, the Somali Transitional Government asked the Ethiopian army to invade the country in order to remove the Islamic Courts from power.  Al Shabaab emerged after the defeat of the Islamic Courts and began fighting the Ethiopian forces and the Somali Transitional Government.  The State Department designated al Shabaab a Foreign Terrorist Organization (FTO) in 2008.

The testimony then turned to Fidse.  Another detainee at the immigration facility where Fidse was being held provided information that Fidse adhered to a radical form of Islam and supported al Qaeda and Osama bin Laden.  The FBI equipped the detainee, known as "CHS 1" (Confidential Human Source 1), with a recording device.  After CHS 1 was deported, the

---

[1] The PSR additionally applied the following offense level increases: three levels for substantial interference under § 2J1.2(b)(2); four levels for aggravated role under § 3B1.1(a); and two levels for obstruction of justice under § 3C1.1.  The district court overruled Fidse's objections to all the enhancements.  Fidse appeals only the terrorism enhancement.

No. 13-50734

FBI placed a second informant, "CHS 2," in the facility.[2]  According to the FBI's transcription of these discussions, Fidse outlined a detailed hypothetical attack by al Shabaab[3] on the U.S. Ambassador in Kenya.[4]  In discussing that plan and in other conversations, Fidse demonstrated an extensive knowledge of heavy weapons, including bazookas, AK assault rifles, machine guns, and armed technical vehicles.  Fidse also said he had paid $100,000 for an armed technical vehicle and weapons that were used in a battle in Idaale, Somalia.[5]  Idaale was the site of a 2006 battle between al Shabaab and Ethiopian forces.  Fidse said that all of the fighters on the vehicle were killed and the vehicle and weapons were burned.  Fidse said he cried when Aden Hashi Ayrow, the leader of al Shabaab, was killed in a U.S. airstrike and said that "the infidels must suffer some consequences."

The FBI then interviewed Fidse.[6]  During the interview, Fidse made numerous assertions at odds with his recorded statements.  The agents then confronted Fidse by playing the recordings.  Fidse denied making the statements on the recordings and denied any ties to terrorism.  He conceded, however, that he may have made statements supportive of terrorist groups.

---

[2] CS1 and Fidse conversed in English.  CS2 and Fidse conversed in Somali, and these conversations were translated by both the government and the defense.

[3] In the recording, CS1 and Fidse use the term "Hizbul Islam" instead of al Shabaab. Wagoner testified that, owing to confusion caused by a temporary splintering of al Shabaab at the time of the conversation, Fidse and CS1 were actually referring to al Shabaab when they used the term Hizbul Islam.

[4] Among other things they discussed while outlining the hypothetical attack, Fidse and CS1 discussed how many cars and U.S. Marine guards the Ambassador might have and what types of weapons the Marines would carry.  Fidse suggested that those carrying out the attack could use a military-style weapon called a "PKM" and could put mines in strategic locations in the streets and wait in a car nearby, causing the Marines to "blow up."

[5] This town has been referred to by the parties at various times as Egale, Idaale, and Lidaale.  All of these names refer to the same place—the village in Somalia where al Shabaab fought the Ethiopian forces in 2006.  For consistency and clarity, we use Idaale.

[6] A Somali interpreter was used and Fidse was given *Miranda* warnings, orally and in writing.

4

No. 13-50734

The government also introduced evidence obtained from the immigration detention facility. Among Fidse's belongings was a cell phone memory card that contained a Kenyan telephone number listed as "H-mohamed." This corresponded to the number the FBI had on file for Mohammed Hamid Suleiman, who had been arrested in Kenya for his role in the 2010 al Shabaab bombing in Uganda.

The defense called one witness, an investigator who had a different interpretation of what was said by Fidse during the conversations with CHS 1 and CHS 2 and attributed the comments about the purchase of the armed vehicle to another person.

At the conclusion of the hearing, before making any factual findings or legal conclusions concerning the terrorism enhancement, the district court imposed a prison term of 48 months on each count to run consecutively. The court reduced what would have otherwise been a Guidelines and statutory maximum sentence of ten years by two years because of time Fidse had spent in immigration custody that otherwise would not be credited against his federal sentence. After the sentence was announced, the following exchange took place:

> THE GOVERNMENT: Just two points, Your Honor. I take it that the Court determined that the PSR was correct and the Court did a variance?
>
> THE COURT: Yes. Yes. And the Court overrules all the objections . . . ROA. 1252.

## II.

Fidse challenges the district court's application of the terrorism enhancement under U.S.S.G. § 3A1.4. Section 3A1.4 provides for a steep offense level increase and an automatic increase to the maximum criminal history category if "the offense is a felony that involved, or was intended to

No. 13-50734

promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a); *see United States v. El-Mezain*, 664 F.3d 467, 570 (5th Cir. 2011). The Guidelines rely on the definition of "federal crime of terrorism" found in 18 U.S.C. § 2332b(g)(5). *See* U.S.S.G. § 3A1.4 cmt. n.1.

Fidse's relevant offense of conviction—conspiracy to make false statements—is not a "crime of terrorism" enumerated in § 2332b(g)(5). Even so, a nonenumerated offense qualifies for the enhancement if it was intended to promote—that is, "was intended to encourage, further, or bring about"—a federal crime of terrorism. *See United States v. Awan*, 607 F.3d 306, 314–15 (2d Cir. 2010) (joining Sixth, Seventh, and Eleventh Circuits in holding that under "intent to promote" provision, the defendant need not have "completed, attempted, or conspired to commit [a federal crime of terrorism]; instead the phrase implies that the defendant has as one purpose of his substantive count of conviction or his relevant conduct the intent to promote a federal crime of terrorism" (quotation marks omitted)). Indeed, the Guidelines expressly acknowledge that an obstruction offense may support the enhancement, stating that an offense that involves "obstructing an investigation of a federal crime of terrorism" is deemed to have involved, or to have intended to promote, that federal crime of terrorism. U.S.S.G. § 3A1.4 cmt. n. 2. For example, the Fourth Circuit affirmed the application of the terrorism enhancement to an obstruction offense that was not itself a crime of terrorism because the defendant lied to the grand jury and FBI about attending a jihadist training camp in connection with an investigation into whether the defendant had committed the enumerated crime of providing material support to a foreign terrorist organization. *United States v. Benkahla*, 530 F.3d 300, 312–13 (4th Cir. 2008).

Although the terrorism enhancement thus may apply when the offense of conviction is not itself a "federal crime of terrorism," this situation requires

findings at the sentencing hearing. Our sister circuits have stated that before applying the enhancement to a defendant's sentence when the offense of conviction was not itself a federal crime of terrorism, the district court "must identify which enumerated federal crime of terrorism the defendant intended to promote, satisfy the elements of § 2332b(g)(5)(A), and support its conclusions by a preponderance of the evidence with facts from the record." *United States v. Arnaout*, 431 F.3d 994, 1002 (7th Cir. 2005); *see also United States v. Ashqar*, 582 F.3d 819, 826 (7th Cir. 2009); *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001); *cf. United States v. Chandia*, 514 F.3d 365, 376 (4th Cir. 2008); *cf. El-Mezain*, 664 F.3d at 571; *cf. Benkahla*, 530 F.3d at 313.

What was the "federal crime of terrorism" under investigation that the district court relied on to support the enhancement in Fidse's case? The district court did not expressly identify one, summarily stating after imposing the sentence that it was adopting the PSR. The PSR listed the relevant federal crime of terrorism as "providing material support to a terrorist (2339[A] and [B])"[7] and listed Fidse's statements concerning the armed vehicle, the hypothetical attack on the U.S. Ambassador, and his terrorism-supporting views as the factual bases for the enhancement. On appeal, Fidse identifies two problems with using his conduct in providing the armed technical vehicle to al Shabaab for use in the 2006 battle as the federal

---

[7] Although the PSR enumerated both 18 U.S.C. § 2339A and § 2339B as potential "federal crimes of terrorism" under investigation, the government relied only on § 2339B to support the enhancement. The provisions constitute two different offenses. Section 2339A prohibits providing material support or resources or concealing or disguising the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of certain enumerated offenses (or attempting or conspiring to do so). By contrast, Section 2339B prohibits knowingly providing material support or resources to a foreign terrorist organization specifically (or attempting or conspiring to do so). The statute defines "terrorist organization" by reference to Section 219 of the Immigration and Nationality Act (INA).

crime of terrorism that was under investigation. For one thing, al Shabaab had not been designated a Foreign Terrorist Organization in 2006.[8] *See* http://www.state.gov/j/ct/rls/other/des/123085.htm (listing al Shabaab's date of FTO designation as 3/18/2008). The government responds by arguing that providing an armed vehicle to al Shabaab prior to 2008 would nonetheless still be relevant to an ongoing conspiracy to provide support to group after it was designated a terrorist organization. But this conspiracy offense was not identified in the district court as the "federal crime of terrorism" that the FBI was investigating, either in the PSR or in any government filing or argument. It also suffers from a second challenge Fidse raises: the record is inconsistent concerning whether the district court made a factual finding that Fidse was involved in this alleged conduct.

The district court treated the terrorism enhancement with the seriousness that was warranted given the stakes to both the government and Fidse. It held a two day sentencing hearing, during which it had to cope with an extensive record complicated by language difficulties and rule on an enhancement on which we have not provided guidance. The district court admirably confronted these challenges, but the lengthy record that resulted poses a dilemma for our review. Although the district court stated after imposing the sentence that it was generally adopting the PSR, which recited the government's evidence related to the purchase of the armed vehicle, it made other comments during the hearing that discounted Fidse's connection to those events. During the testimony of Juan Hernandez, the defense investigator who testified about his review of the recordings and transcripts,

---

[8] Fidse did not raise this argument below in either his objections to the PSR or at the sentencing hearing, focusing instead on his argument that it was not his voice, but a third party's, making the statements the government attributed to him regarding the armed technical vehicle.

Fidse disputed that it was his voice on the recording discussing the purchase of the armed vehicle for al Shabaab and attempted to provide evidence that a third party to the conversation made those statements. In response, the district court said that it would be taking the issue "off the table" and would "grant [the defense] that one," implying that the court would not apply the enhancement on the basis of any involvement with purchasing an armed vehicle for al Shabaab. *See* ROA. 1202–05; ROA. 1224. But on at least two other occasions in addition to its final adoption of the PSR, the district court indicated it was accepting the government's view that Fidse made the statements about purchasing the armed vehicle. On the first day of the sentencing hearing, the district court stated that:

> [A]t this point in the proceeding the Court—I think this is undisputed, that—three things that have come out, talking about Marines and ambassadors, talking about armed vehicles and talking about the phone number to Mr. Suleiman. And, frankly, the Court is ready to make its decision on those three pieces of evidence and the Court's interpretation and inference from that.

ROA. 1092; *see also* ROA 1189–90 (stating on day two of the hearing that, among other things, the district court was considering "the armed vehicles and buying armed vehicles").

The same inconsistent findings exist with respect to other evidence the government relies on to support application of the enhancement. Although the statement quoted above indicates the district court was also relying on Suleiman's phone number being found in Fidse's phone card, the district court later said that would give "very light weight, if any" weight to that evidence. ROA. 1241. Finally, the district court stated that it would "discount" Fidse's extensive knowledge of heavy weapons because "[t]here are a lot of people in the United States who are very knowledgeable about various firearms. That doesn't make them terrorists." ROA. 1212–13.

No. 13-50734

These uncertainties surrounding both the factual findings below and which federal crime of terrorism the district court relied on as the one under investigation when Fidse lied to the FBI preclude meaningful review of the merits of Fidse's claim. *See United States v. Lawal*, 810 F.2d 491, 492–93 (5th Cir. 1987). We know neither the "federal crime of terrorism" benchmark against which to evaluate whether the facts support such a finding nor the facts that can be relied on in making that assessment. "For this Court to resolve the ambiguity created by the district court's statements would require precisely the sort of second-guessing Rule 32[ ] is designed to prevent." *Id.*; *cf. United States v. Zapata-Lara*, 615 F.3d 388, 391 (5th Cir. 2010) (vacating sentence and remanding for resentencing when district court applied two-level enhancement and adopted PSR, but record left this Court not "sure what rationale the [district] court had in mind to support the enhancement, based on its limited statement").

The parties dispute the applicable standard of review. But even if plain error applied to some of Fidse's contentions, we would be unable to conduct that deferential review given our inability to discern the facts found by the district court. Without knowing the specific factual and legal basis for the enhancement, we are unable to determine whether error occurred or whether any error would have affected the district court's decision to apply the enhancement. *See Puckett v. United States*, 556 U.S. 129, 135 (2009) (stating that plain error review requires a showing of clear error affecting the appellant's substantial rights, "which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings") (internal citation omitted).

10

No. 13-50734

We therefore VACATE Fidse's sentence and REMAND to the district court for resentencing. [9]  On remand, the district court of course is free to conduct such proceedings as it deems necessary to address our concerns as expressed in this opinion. *See also United States v. Marmolejo*, 139 F.3d 528, 531 (5th Cir. 1998) ("[T]he resentencing court can consider whatever this court directs—no more, no less. All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below.").  In doing so, it should clarify its factual findings concerning the alleged purchase of the armed vehicle, Suleiman's cell phone number, and other disputed information on which the current record is ambiguous.  After making those Rule 32 findings, it may then determine whether the factual record supports a conclusion that Fidse's false statements obstructed an investigation into a federal crime of terrorism.  Any ruling applying the enhancement should "identify which enumerated federal crime of terrorism the defendant intended to promote." *Arnaout*, 431 F.3d at 1002.

---

[9] Because we vacate the sentence on other grounds, there is no need to address Fidse's other argument that the district court considered an "improper factor" when sentencing Fidse by asking the prosecutor if he had upheld his oath to do justice.  In any event, a prosecutor making these statements in response to a question posed directly by the court is a quite different situation than engaging in unsolicited "vouching" in front of a jury.