## **IN THE UNITED STATES COURT OF APPEALS**
## **FOR THE FIFTH CIRCUIT**

No. 16-50250

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

ABDULLAHI OMAR FIDSE, also known as Abdirahman LNU, also known as Abdirahman Fidse, also known as Abdullaho Fidse,

      Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before BARKSDALE, GRAVES, and HIGGINSON, Circuit Judges.[*]
STEPHEN A. HIGGINSON, Circuit Judge:

Abdullahi Omar Fidse appeals his sentence for conspiring to obstruct an agency proceeding and conspiring to make false statements to the executive branch in a terrorism investigation. *See* 18 U.S.C. §§ 371, 1001, 1505. Specifically, he argues that the district court erroneously enhanced his Sentencing Guidelines range by applying U.S.S.G. § 3A1.4. This enhancement automatically increases a defendant's base offense level to 32 and criminal history category to the maximum of VI if the defendant's offense "is a felony

---

[*] Judge Barksdale concurs in the judgment only.

No. 16-50250

that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). Fidse has appealed his sentence once before. *See United States v. Fidse*, 778 F.3d 477 (5th Cir. 2015) ("*Fidse I*"). In that initial appeal, we vacated the sentence and remanded for resentencing. We now affirm.

## I

In June 2008, Fidse and a companion arrived at the Hidalgo, Texas, port of entry, claiming to have fled persecution in their home country of Somalia and asking for political asylum. *Id.* at 479. Fidse's story, however, quickly unraveled, and it became clear that he had made numerous false statements in connection with his asylum application. Based on these false statements, Fidse was denied asylum and ordered deported. *Id.*

Meanwhile, the FBI began to suspect that Fidse had ties to al-Shabaab, an East African jihadist militant group that the United States designated a foreign terrorist organization in February 2008.[1] While Fidse was in immigration custody, the FBI, through the Joint Terrorism Task Force, opened a terrorism investigation based on a confidential source's tip that Fidse supported al-Shabaab, as well as al-Qaeda and Osama bin Laden, and wanted to commit terrorist acts. Among the evidence collected by the FBI were recorded conversations between Fidse and confidential sources, in which Fidse spoke about a hypothetical attack on the U.S. Ambassador to Kenya and claimed to have paid $100,000 for an armed technical vehicle used by al-Shabaab fighters in a battle in Idaale, Somalia.[2]

---

[1] 8 U.S.C. § 1189 empowers the Secretary of State to designate an organization a foreign terrorist organization upon finding that: (1) the organization is a foreign organization; (2) the organization engages in terrorist activity; and (3) the terrorist activity or terrorism threatens the security of United States nationals or the national security of the United States. 8 U.S.C. § 1189(a)(1)(A)–(C).

[2] From the name of the village referenced by Fidse, the Task Force was able to discern that he was referring to a battle between the Ethiopian army and al-Shabaab in 2006. Fidse

2

No. 16-50250

In 2009, the FBI interviewed Fidse and informed him that they were investigating his terrorist ties and his activities with al-Shabaab. Fidse repeated the false story he gave at the border, denied having ties to terrorism, and made numerous assertions at odds with his recorded statements. He also specifically denied purchasing firearms and an armed technical vehicle for al-Shabaab. Upon learning of the Task Force investigation, Fidse contacted his companion and, in recorded phone conversations, encouraged her to ask contacts in Kenya to destroy evidence. The companion eventually confessed to making false statements to corroborate Fidse's stories. She also admitted to knowing that Fidse belonged to a clan with ties to al-Shabaab.

In December 2012, Fidse pleaded guilty to one count of conspiring to obstruct an agency proceeding and one count of conspiring to make false statements to the executive branch in a terrorism investigation, in violation of 18 U.S.C. §§ 371, 1001, 1505. Based on Fidse's obstruction of the Task Force investigation, the Pre-sentence Report (PSR) recommended that the district court apply U.S.S.G. § 3A1.4, which enhances a defendant's sentence if "the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." In addition to challenging many of the PSR's factual findings, Fidse objected to the enhancement, arguing that his offense did not "involve," nor was it "intended to promote," a federal crime of terrorism. He also argued that the enhancement could not apply because the Government failed to identify the specific federal crime of terrorism encompassed by the obstructed investigation. Instead, Fidse argued, the Task Force investigation was a general, intelligence gathering inquiry, and, therefore, his obstructive conduct could not have been intended to promote any specific federal crime of terrorism.

---

described the armed technical vehicle as a Toyota Land Cruiser (a sport utility vehicle) outfitted with mounted machine guns.

3

No. 16-50250

After a two-day evidentiary hearing, the district court overruled Fidse's objections, but did not make any factual findings or legal conclusions related to the terrorism enhancement specifically. *Fidse I*, 778 F.3d at 480–81. The court imposed a prison term of 48 months on each count to run consecutively, a sentence that took into account the two years Fidse spent in immigration custody. *Id.* at 480–81.

Fidse appealed his sentence to this court, challenging the district court's application of the terrorism enhancement. *Id.* at 482. Finding reversible error, we vacated his sentence and remanded for resentencing. *Id.* at 484. We observed that "uncertainties surrounding both the factual findings below and which federal crime of terrorism the district court relied on as the one under investigation when Fidse lied to the FBI preclude[d] meaningful review of the merits of Fidse's" appeal. *Id.* at 483. Accordingly, we directed the district court to clarify various factual findings, including any "disputed information on which the current record is ambiguous." *Id.* at 484. We also emphasized that "[a]ny ruling applying the enhancement should identify which enumerated federal crime of terrorism the defendant intended to promote." *Id.* (internal quotation marks and citation omitted).

Following our remand, yet without a new evidentiary hearing, the Government filed "Proposed Sentencing Findings of Fact and Conclusions of Law." Fidse filed a similar document as well as a lengthy sentencing memorandum with attached exhibits. The district court adopted, without change, the Government's document as its factual findings and conclusions of law. Based on its complete acceptance of the Government's proposed findings, the court again concluded that the enhancement applied, sentencing Fidse to the same sentence it had given him originally, two consecutive 48-month terms of imprisonment.

Fidse again appeals the district court's application of § 3A1.4,

challenging the enhancement on two grounds. First, he argues that the record does not support that the Task Force was investigating a specific federal crime of terrorism. He further contends that the record does not support the district court's determination that Fidse's obstructive conduct was intended to promote a federal crime of terrorism. Although this sentencing enhancement is problematic and the absence of tailored factual inquiry and analysis responsive to our remand further complicates this appeal, we do not perceive clear error in the district court's factual determinations on these contested points and therefore affirm.

## II

"Whether a district court misinterpreted the Guidelines and thereby committed an error of law is an issue we examine de novo." *United States v. Teuschler*, 689 F.3d 397, 399 (5th Cir. 2012). "Factual findings underlying the district court's application of the Guidelines are reviewed for clear error." *United States v. Pringler*, 765 F.3d 445, 451 (5th Cir. 2014). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id.* (quoting *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012)).

## III

The § 3A1.4 terrorism enhancement applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a).[3] The term "federal crime of terrorism" as used in § 3A4.1 "has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." *See* U.S.S.G. § 3A4.1 cmt. n.1. Under § 2332b(g)(5), an offense qualifies as a federal crime of terrorism if two distinct requirements are met: (1) the offense is a violation of one or more enumerated statutory provisions, and (2) the offense "is calculated

---

[3] The Guidelines define "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 1B1.1 cmt. n.1(H).

to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." *See* § 2332b(g)(5)(A), (B).[4] The sentencing enhancement provided by § 3A1.4 is "steep." *Fidse I*, 778 F.3d at 481; *accord United States v. El-Mezain*, 664 F.3d 467, 570 (5th Cir. 2011). Its application results in an automatic increase to an offense level of 32 and the maximum criminal history category of VI. U.S.S.G. § 3A1.4(a), (b).

Courts, including ours, have recognized that the structure of § 3A1.4 establishes two bases for applying the enhancement. *See Fidse I*, 778 F.3d at 481; *United States v. Arnaout*, 431 F.3d 994, 1001–03 (7th Cir. 2005); *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004); *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001). The first—if the offense "involved" a federal crime of terrorism—has been understood to apply when "a defendant's offense or relevant conduct *includes* a federal crime of terrorism." *Arnaout*, 431 F.3d at 1001 (emphasis added); *accord United States v. Parr*, 545 F.3d 491, 504 (7th Cir. 2008); *Mandhai*, 375 F.3d at 1247–48; *Graham*, 275 F.3d at 516. Thus, "an offense 'involves' a federal crime of terrorism only if the crime of conviction is itself a federal crime of terrorism," *Parr*, 545 F.3d 491 at 504, or if the "relevant conduct includes such a crime," *United States v. Awan*, 607 F.3d 306, 313–14 (2d Cir. 2010).

Alternatively, the enhancement applies "[i]f the offense . . . was intended to promote[] a federal crime of terrorism." U.S.S.G. § 3A1.4(a); *accord Arnaout*, 431 F.3d at 1001. As the Sixth Circuit has explained, "[a] defendant who intends to promote a federal crime of terrorism has not necessarily completed,

---

[4] Enumerated offenses include those involving, for example, the destruction of aircraft or aircraft facilities, violence at international airports, biological and chemical weapons, the assassination of specified government officials, use of nuclear weapons and other weapons of mass destruction, hostage taking, terrorist attacks and other acts of violence against mass transportation systems, and providing material support to terrorists and terrorist organizations. 18 U.S.C. § 2332b(g)(5)(B).

attempted, or conspired to commit the crime[.]" *Graham*, 275 F.3d at 516. "[I]nstead the phrase implies that the defendant *has as one purpose* of his substantive count of conviction or his relevant conduct the intent to promote a federal crime of terrorism." *Id.* (emphasis added). In such cases, "the terrorism enhancement does not hinge upon a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation. Rather, it is the defendant's *purpose* that is relevant, and if that purpose is to promote a terrorist crime, the enhancement is triggered." *Mandhai*, 375 F.3d at 1248 (emphasis added).

"[T]he Guidelines expressly acknowledge that an obstruction offense," like Fidse's, "may support the enhancement" under the "intended to promote" prong. *Fidse I*, 778 F.3d at 481. Application Note 2 provides that "an offense that involved . . . obstructing an investigation of a federal crime of terrorism, shall be considered to have involved, or to have been intended to promote, that federal crime of terrorism." U.S.S.G. § 3A1.4 cmt. n.2. This certainly makes sense to the extent that a defendant can intend to promote a crime by "try[ing] to prevent the government from finding out about it." *United States v. Ashqar*, 582 F.3d 819, 826 (7th Cir. 2009). As the Seventh Circuit has observed, "[i]n its ordinary usage, 'promote' means 'to help or encourage.'" *Arnaout*, 431 F.3d at 1002 (citing Random House Webster's College Dictionary 1042 (2d ed. 1997)); *accord Fidse I*, 778 F.3d at 481. Thus, "the word 'promote,' as used in § 3A1.4, signifies that where a defendant's offense or relevant conduct helps or encourages a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(B), then § 3A1.4 is triggered." *Arnaout*, 431 F.3d at 1002.

As we explained in his first appeal, "Fidse's relevant offense of conviction—conspiracy to make false statements—is not a 'crime of terrorism' enumerated in § 2332b(g)(5)" and, thus, his offense did not "involve" a federal crime of terrorism as contemplated by the enhancement. *Fidse I*, 778 F.3d at

481. However, we clarified that Fidse's offense of conspiring to make false statements and other relevant conduct could still "qualif[y] for the enhancement if it was *intended to promote*—that is, 'was intended to encourage, further, or bring about'—a federal crime of terrorism." *Id.* (emphasis added) (citation omitted). In cases such as this one, in which the defendant was not actually convicted of a federal crime of terrorism or the defendant's relevant conduct did not include such a crime, a district court must: (1) "identify which enumerated federal crime of terrorism the defendant intended to promote"; (2) "satisfy the elements of § 2332b(g)(5)(A)," which requires that the offense be "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct"; and (3) "support its conclusions by a preponderance of the evidence with facts from the record." *Arnaout,* 431 F.3d at 1002; *accord Fidse I*, 778 F.3d at 481.

In other words, the district court was required to find by a preponderance that the Task Force was investigating a possible violation of one of the statutes listed in § 2332b(g)(5)(B) and that the possible violation was "calculated" in the manner described by § 2332b(g)(5)(A), and was further required to find that one purpose of Fidse's conduct was to promote that federal crime of terrorism.

## IV

Fidse first claims that the record does not support the district court's determination that the Task Force investigation encompassed a specific federal crime of terrorism, as our remand expressly required, and was instead a general terrorism investigation. We agree with Fidse that the evidence on this point is thin and the record contains contradictory evidence about the

nature of the Task Force investigation.[5] However, under clear error review, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Harris*, 434 F.3d 767, 773 (5th Cir. 2005) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990)). We conclude that the district court did not clearly err.

The district court found that the Task Force was specifically investigating a possible conspiracy to violate 18 U.S.C. §§ 2339A and 2339B. "Section 2339A prohibits providing material support or resources or concealing or disguising the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of certain enumerated offenses (or attempting or conspiring to do so)." *Fidse I*, 778 F.3d at 482 n.7. "Section 2339B prohibits knowingly providing material support or resources to a foreign terrorist organization specifically (or attempting or conspiring to do so)." *Id.* Both are enumerated statutes listed in § 2332b(g)(5)(B). The district court concluded that "while the defendant's actions purchasing the vehicle and arming it for al-Shabaab in 2006 may have occurred prior to al-Shabaab's designation as a Foreign Terrorist Organization in February 2008, the defendant's participation in an ongoing conspiracy would still be encompassed under § 2339B and/or 2339A."

---

[5] For example, the Government's own witnesses described the investigation in a way that made it sound more like a general terrorism investigation. Further, "material support," the specific federal crime of terrorism now urged by the Government, was not mentioned during the two-day hearing. And, as we observed in *Fidse I*, that initial appeal was the first time the Government raised its theory that the investigation encompassed a conspiracy offense as the federal crime of terrorism, an argument the Government continues to urge in this appeal as well. 778 F.3d at 482.

In light of the record as a whole, the district court's factual determination that the Task Force investigation encompassed a possible §§ 2339A and 2339B conspiracy was plausible. *See Harris*, 434 F.3d at 773. Indeed, the Government could have reasonably believed that if Fidse provided material support to al-Shabaab in the past, he may have continued to engage in those activities or conspire with others to do so, especially in light of positive statements he made about al-Qaeda and al-Shabaab while in immigration detention and various other red flags, such as his willingness to engage in a conversation about a hypothetical attack on the U.S. Ambassador to Kenya and his attempts to recruit associates to destroy evidence in Kenya.

Our analysis, however, cannot end there. The district court's identification of a qualifying statutory provision alone does not constitute "identify[ing] a federal crime of terrorism," because a "[f]ederal crime of terrorism means an offense that" not only is a violation of one of the enumerated statutory provisions listed in § 2332b(g)(5)(B), but also "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." § 2332b(g)(5)(A), (B). "The definition is stated in the conjunctive, so both requirements must be met." *Parr*, 545 F.3d at 504.[6] It is plausible that the offenses encompassed by the

---

[6] The Government failed to address this issue in its briefing. To the extent the Government suggests that simply pointing to § 2339A or 2339B qualifies as identifying a "federal crime of terrorism," we note that at least one of our sister circuits has rejected this argument. In *United States v. Chandia*, 514 F.3d 365 (4th Cir. 2008), the Fourth Circuit vacated and remanded for resentencing, because the district court "appeared to assume (erroneously) that the enhancement automatically applies to a material support conviction" and therefore "did not make any factual findings related to the intent [i.e., 'calculation'] element." *Id.* at 376. We agree that assuming a violation of § 2339A or § 2339B is a per se federal crime of terrorism without more would render the "calculation" requirement articulated in § 2332b(g)(5)(A) superfluous. It would also undercut our agreement with our sister circuits in *Fidse I* that a § 2332b(g)(5)(A) finding is required when identifying the specific federal crime of terrorism on which the enhancement is based. *See Fidse I*, 778 F.3d at 481 ("Our sister circuits have stated that before applying the enhancement to a defendant's sentence when the offense of conviction was not itself a federal crime of terrorism, the district

No. 16-50250

Task Force investigation were "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." § 2332b(g)(5)(A); *see also Harris*, 434 F.3d at 773 ("In reviewing whether there was evidence to support the district court's conclusion that [the] offense was 'calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct,' [this court] review[s] [the district court's] factual findings for clear error."). The Government was investigating a conspiracy to provide material support to al-Shabaab, an organization that the district court noted wishes "to influence and to affect the conduct of multiple governments by intimidation and coercion and through retaliation." *See El-Mezain*, 664 F.3d at 571 (describing the foreign terrorist organization Hamas as having the "goal of meeting the Palestinian/Israeli conflict with violent jihad and [rejecting] peace efforts and compromise solutions," noting that the defendants knew that they were supporting Hamas, and highlighting their close ties to the Hamas movement). Further, the district court highlighted statements Fidse made throughout the investigation suggesting that the conspiracy contemplated by the Government investigation was "calculated" as described in § 2332b(g)(5)(A).

Accordingly, we find unavailing Fidse's argument that the district court clearly erred in concluding that the Task Force investigation encompassed a specific federal crime of terrorism.

## V

Fidse next argues that the record does not support that his offense was "intended to promote[] a federal crime of terrorism," as the enhancement

---

court 'must identify which enumerated federal crime of terrorism the defendant intended to promote, *satisfy the elements of § 2332b(g)(5)(A),* and support its conclusions by a preponderance of the evidence with facts from the record.'" (emphasis added) (quoting *Arnaout*, 431 F.3d at 1002)).

requires. U.S.S.G. § 3A1.4(a). In response, the Government argues that "the [Task Force] was conducting a terrorism investigation encompassing conspiracies to violate Sections 2339A and 2339B and [Fidse] intentionally attempted to and did obstruct this investigation. By doing so, [Fidse] promoted a crime of terrorism, thus making USSG § 3A1.4 applicable."

In its briefing and at oral argument, the Government's position could imply an understanding of § 3A1.4 that could impose a form of strict liability, whereby if a defendant obstructs an investigation and the Government can later show that the investigation encompassed a specific federal crime of terrorism, the enhancement automatically applies without further findings. We are concerned that this approach divorces application of the enhancement from the plain meaning of its text and its purpose, bringing more people under its reach than those who "intend to promote a federal crime of terrorism" through their underlying unlawful conduct. For example, such an articulation could permit unlimited application of the enhancement to those who make false statements to government officials, but are completely unaware of what the Government is investigating or that, by lying, they are obstructing a terrorism investigation. Indeed, those seeking refuge in the United States, many with limited English proficiency, face extensive questioning upon entry and may omit information—or, at their peril, dissemble—for a host of diverse motivations—some nefarious and some benign, but most unrelated to terrorism. *See Maslenjak v. United States*, __ S. Ct. __, 2017 WL 2674154, at *7 (2017) (in the naturalization context, distinguishing between misrepresentations made "for the purpose of obtaining [immigration] benefits" and those "made for other reasons, such as embarrassment, fear, or a desire for privacy" (quoting 8 U.S.C. § 1101(f)(6); *Kungys v. United States*, 485 U.S. 759, 780 (1988))). These individuals may do so, unwittingly, while being questioned by border agents diligently investigating federal crimes of

terrorism. Although their misstatements may obstruct such investigations, we cannot say they "intend to promote" underlying crimes about which they are entirely ignorant and which they do not even know are being investigated.

We need not fully untangle these complexities or fix the outer limits of the intent requirement in this case. Evidence in the record makes plausible the conclusion that Fidse knew that the Government was investigating a conspiracy to provide material support to al-Shabaab and that at least one purpose of his false statements was to obstruct that investigation and thereby promote the federal crime of terrorism being investigated. The district court concluded that Fidse "both knowingly attempted to *and* succeeded in obstructing an investigation regarding his past criminal and terrorist activities, and his past, current, and future dangers of conspiring to provide material support to terrorists both in the United States and abroad." The FBI's line of questioning would have notified Fidse that the Task Force was investigating his ties to and support of al-Shabaab—including his provision of an armed technical vehicle to the group. The record supports that Fidse acted with intent to thwart that investigation into a possible conspiracy to provide material support to al-Shabaab—a foreign terrorist organization, which, as the district court observed, wishes "to influence and to affect the conduct of multiple governments by intimidation and coercion and through retaliation." Fidse not only lied about his statements supportive of terrorist organizations and his provision of the armed technical vehicle, but also warned his companion that the Task Force was investigating his terrorist ties and asked her to recruit others overseas to destroy evidence. Thus, it is plausible in light of the record as a whole that one purpose of Fidse's offense was to promote a

federal crime of terrorism by obstructing the Task Force investigation.[7]

We note that our sister circuits have affirmed application of the enhancement in similar situations involving obstruction like Fidse's. For example, as we noted in *Fidse I*, the Fourth Circuit affirmed application of the enhancement "to an obstruction offense that was not itself a crime of terrorism because the defendant lied to the grand jury and FBI about attending a jihadist training camp in connection with an investigation into whether the defendant [and others] had committed the enumerated crime of providing material support to a foreign terrorist organization." *Fidse I*, 778 F.3d at 481 (citing *United States v. Benkahla*, 530 F.3d 300, 312–13 (4th Cir. 2008)). Similarly, the Seventh Circuit upheld application of the enhancement to a defendant convicted of obstruction of justice and criminal contempt after refusing to answer certain questions before a grand jury investigating alleged terrorist acts of Hamas—specifically the organization's financial, logistical, and communication support structure in the United States (a fact explained to the defendant by the prosecutor overseeing the grand jury investigation). *See Ashqar*, 582 F.3d at 826–27.

Thus, we find no clear error in the district court's determination that Fidse's offense was intended to promote a federal crime of terrorism.

---

[7] We reject Fidse's suggestion that the Government was required to prove that his offense or relevant conduct satisfied each and every element of the conspiracy offense under investigation. As explained above, the enhancement merely requires "that the defendant *has as one purpose* of his substantive count of conviction or his relevant conduct the intent to promote a federal crime of terrorism." *Graham*, 275 F.3d at 516 (emphasis added). We agree that "the terrorism enhancement does not hinge upon a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation. Rather, it is the defendant's purpose that is relevant, and if that purpose is to promote a terrorist crime, the enhancement is triggered." *Mandhai*, 375 F.3d at 1248. As our remand made clear, the district court was required to find that the Task Force investigation was of a specific federal crime of terrorism, not that Fidse fully carried out a federal crime of terrorism.

No. 16-50250

**VI**

For the foregoing reasons, we affirm the sentence of the district court.