[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10564

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

FRANCISCO JOSEPH ARCILA RAMIREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20036-JEM-1

_____

Before WILSON, ROSENBAUM, and HULL, Circuit Judges.

HULL, Circuit Judge:

After pleading guilty, Francisco Arcila Ramirez ("Arcila Ramirez") appeals his 240-month sentence for providing material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1). Arcila Ramirez challenges the district court's imposition of the terrorism enhancement under U.S.S.G. § 3A1.4. After review and oral argument, we conclude that the district court failed to make the required fact findings for the terrorism enhancement; thus, we vacate Arcila Ramirez's sentence and remand.

## I. BACKGROUND FACTS

### A. Offense Conduct

Colombian law enforcement were investigating how illicit firearms and ammunition were smuggled into Colombia and distributed to guerrilla paramilitary groups. A Colombian weapons trafficker began cooperating as a confidential source ("CI").

The CI met Arcila Ramirez, a Colombian national who was a legal resident of the United States. Arcila Ramirez and the CI discussed the demand for AK-47 style weapons in Colombia. Residing in Southern Florida, Arcila Ramirez enlisted "straw"

purchasers to buy those types of firearms, which he would smuggle into Colombia.[1]

From December 2017 to August 2018, Arcila Ramirez obtained approximately 45 firearms using straw purchasers in Florida and sold them throughout Colombia. Arcila Ramirez knowingly sold six of those firearms to the National Liberation Army ("ELN"), a Marxist-Leninist insurgent group that the U.S. State Department has designated a foreign terrorist organization.

The ELN historically focused on attacking economic infrastructure, including oil and gas pipelines and electricity pylons. While the Colombian government has successfully engaged in peace negotiations with other guerrilla groups, the ELN has remained opposed to any ceasefire and has increased its guerrilla attacks, including bombings of police stations. The ELN also engages in narcotics trafficking, extortion of companies, and kidnappings for ransom to fund its operations.

In September 2018, U.S. law enforcement detected a pattern of repetitive firearms purchases by two of Arcila Ramirez's straw purchasers. The ensuing investigation revealed that between April and August of 2018, Arcila Ramirez had paid the straw purchasers to buy firearms from multiple federal firearm licensees under false

---

[1] While Arcila Ramirez was a legal permanent resident of the United States, he was born and raised in Colombia, lived there until 2004, and remains a Colombian citizen. Some of his family still live in Colombia, and he frequently visited Colombia for business and personal reasons.

pretenses and Arcila Ramirez then exported those firearms to Colombia for resale.

On August 16, 2018, one straw purchaser bought six AK-style pistols for Arcila Ramirez in Southern Florida. On August 24, 2018, Arcila Ramirez spoke with the CI in a recorded telephone call. Speaking in code, the CI told Arcila Ramirez that the ELN was "restless," and Arcila Ramirez responded that he had "already made the purchase" and had also bought 100 magazines of ammunition. The CI said the ELN had him "flustered" for the ammunition magazines, to which Arcila Ramirez replied, "I'll help you out, I'll help you out." Later, Arcila Ramirez concealed the six firearms in air compressors and shipped them and 100 magazines of AK-47 ammunition to Barranquilla, Colombia.

On August 31, 2018, Arcila Ramirez flew to Colombia to broker the weapons shipment with the CI and a known weapons broker for the ELN. On September 5, 2018, Arcila Ramirez and the CI met with the ELN weapons broker and discussed the sale of the six AK-style pistols, which were the weapon of choice for high-ranking ELN personnel. The ELN weapons broker paid for the six pistols and told Arcila Ramirez that he wanted to buy all weapons and components Arcila Ramirez could bring to Colombia.

On September 7, 2018, while under surveillance, Arcila Ramirez and the CI met at a storage location in Barranquilla, loaded the air compressors onto a truck, and took them to a location where they were cut open to retrieve the six pistols, the 100 ammunition magazines, and 32 AR-15 semi-automatic

"uppers." Unbeknownst to Arcila Ramirez, two of the AK-style pistols contained hidden GPS trackers.

On September 10, 2018, again under surveillance, the pistols were driven to a rendezvous location with the ELN weapons broker in an area controlled by the ELN. The ELN weapons broker directed that the pistols be taken to a farmhouse in a rural area. The next day, the pistols were delivered to the ELN at the farmhouse. That same day, Arcila Ramirez flew back to Miami with $26,567, which he declared at the airport as attributable to his selling cars in Colombia.

After returning to Florida, Arcila Ramirez focused on obtaining larger quantities of firearm components, such as triggers and rifle barrels, to bring to Colombia for assembly because parts were cheaper to buy, easier to smuggle, and did not require straw purchasers. In a recorded telephone call on September 16, 2018, the CI told Arcila Ramirez that the ELN had told him "everything is fine" and to assist Arcila Ramirez. They discussed weapons parts and what Arcila Ramirez had already purchased. The CI told Arcila Ramirez the ELN wanted the parts "as soon as possible."

After purchasing more air compressors, Arcila Ramirez flew to Cartagena, Colombia on October 17, 2018 and met with the CI. Arcila Ramirez took money from the CI and paid the fee to release the shipping container with the air compressors. The shipment was then split up between Arcila Ramirez's brother and a friend. Two weeks later, Colombian National Police arrested the brother

and the friend and seized numerous firearm parts, ammunition magazines, and the air compressors.

## B. Arrest

On January 11, 2019, Arcila Ramirez was arrested in the United States. Arcila Ramirez waived his *Miranda* rights and admitted to using straw purchasers to buy firearms on his behalf, deliberately concealing those firearms in the air compressors, and smuggling the firearms into Colombia for resale. Arcila Ramirez admitted that the firearms had "to be for guerillas or delinquents," noting that the "ELN is over there." Arcila Ramirez explained that it was better for the guerillas to get firearm parts because they were cheaper. Arcila Ramirez admitted that he was participating in sending weapons to Colombia, but said he was not part of or involved with a group.[2]

---

[2] During his post-arrest interview, Arcila Ramirez admitted that he was aware that some of the firearms and firearm parts he sent to the Colombian weapons broker would go to "groups," including "criminals, guerillas, para-military or whatever else is in Colombia" but he did not know which groups. Arcila Ramirez was adamant he was not "part of that world" and had "never seen a guerrilla in [his] life." When an agent pressed Arcila Ramirez to admit that, even though he did not "know in whose hands that will end up," he was "participating in this" by sending firearms and parts to Colombia, Arcila Ramirez agreed, stating, "Yes, I am participating in that. I know that. Okay, I am participating in that but I am not—not part of a group. I am not involved in a group, I mean, I am not part of a group."

## C.  Indictment and Guilty Plea

A superseding indictment charged Arcila Ramirez with: (1) conspiring to illegally deal firearms in violation of 18 U.S.C. § 922(a)(1)(A), and transport them to foreign customers in Colombia, all in violation of 18 U.S.C. § 371 (Count One); (2) four counts of making false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. §§ 922(a)(6) and 2 (Counts Two through Five); (3) dealing in firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 2 (Count Six); (4) conspiring to provide material support to the ELN, a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count Seven); and (5) knowingly providing material support to the ELN, a foreign terrorist organization, in violation of 18 U.S.C. §§ 2339B(a)(1) and 2 (Count Eight).

Pursuant to a plea agreement, Arcila Ramirez pled guilty to Count Eight, the substantive material support offense.  Count Eight alleged that from August 2018 to January 2019, Arcila Ramirez knowingly provided material support, including property, weapons, firearm parts and components, and services, to the ELN, while knowing that the ELN was a designated foreign terrorist organization and that the ELN engages in and had engaged in terrorist activity and terrorism.

In exchange for the plea, the government agreed to dismiss the remaining seven counts and to recommend a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a)-(b).  The plea agreement advised that the government

20-10564                Opinion of the Court                    8

planned to seek a terrorism enhancement under U.S.S.G. § 3A1.4 and that Arcila Ramirez was free to challenge the terrorism enhancement.[3]

Arcila Ramirez agreed to the government's factual proffer, which stipulated, *inter alia*, that: (1) from August 2018 to January 2019, Arcila Ramirez knowingly provided material support to the ELN, knowing that the ELN engaged in, or engages in, terrorist activity or terrorism; (2) on August 31, 2018, Arcila Ramirez flew to Colombia to negotiate the sale of six AK-style firearms with a conspirator he knew at that time "was a weapons broker for the ELN and other criminal and paramilitary groups"; and (3) at their September 5, 2018 meeting, Arcila Ramirez agreed to sell the six firearms to the conspirator "for the ELN" and to selling him additional firearms in the future.

## D. Sentencing

A presentence investigation report ("PSI") recommended an adjusted offense level of 39, using: (1) a base offense level of 26 under U.S.S.G. § 2M5.3(a); (2) a two-level increase under § 2M5.3(b)(1)(A)-(B) because the offense involved the provision of firearms; (3) a two-level increase under § 3B1.1(c) because Arcila

---

[3] Arcila Ramirez also agreed to the entry of a stipulated judicial order of removal pursuant to 8 U.S.C. § 1182 because he was removable pursuant to 8 U.S.C. § 1227(a)(4)(B), which deems deportable an alien who has engaged in a terrorist activity or who the Secretary of State determines has associated with a terrorist organization. *See* 8 U.S.C. § 1227(a)(4)(B) (cross-referencing 8 U.S.C. § 1182(a)(3)(B) & (F)).

Ramirez was an organizer or leader; (4) a 12-level increase under § 3A1.4(a) because his offense "involved," or "was intended to promote," a "federal crime of terrorism"; and (5) a three-level decrease under § 3E1.1(a)-(b) for acceptance of responsibility. The § 3A1.4 terrorism enhancement increased Arcila Ramirez's criminal history category from I to VI. *See* U.S.S.G. § 3A1.4(a)-(b).

His total offense level of 39 and criminal history category of VI yielded an advisory guidelines range of 360 months to life imprisonment. The statutory maximum for Arcila Ramirez's § 2339B(a)(1) conviction was 20 years. Thus, his guidelines prison term became 240 months under U.S.S.G. § 5G1.1(a).

Arcila Ramirez objected to the PSI's recommendation that he receive the § 3A1.4 terrorism enhancement. For purposes of that guideline, the term "federal crime of terrorism" is defined by 18 U.S.C. § 2332b(g)(5), which requires that the offense: (1) "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct"; and (2) "is a violation of" an enumerated statute. U.S.S.G. § 3A1.4 cmt. n.1.

At sentencing, the district court asked whether Arcila Ramirez was arguing that the ELN "wasn't a terrorist organization or that he didn't know it was a terrorist organization or what?" Arcila Ramirez responded that he was not making either of those arguments.

Instead, Arcila Ramirez argued U.S.S.G. § 3A1.4 required that the government prove not only his material support to the ELN, a known terrorist organization, but also that his offense conduct was "calculated" to influence, affect, or retaliate against the Colombian government. In addition to terrorism, the ELN engages in general criminal activity, such as drug trafficking and kidnapping. Defense counsel argued that, even if a jury found Arcila Ramirez guilty of the § 2339B(a)(1) material support offense, the district court would still have to find that Arcila Ramirez had the specific intent required for the enhancement, i.e., that his offense was "calculated" to influence or affect government conduct. Defense counsel emphasized that the terrorism enhancement was concerned about what Arcila Ramirez intended, not what the terrorist organization did. Arcila Ramirez claimed his motive was to profit financially, not to retaliate against the Colombian government.

After extensive colloquy with the parties' counsel, the district court overruled Arcila Ramirez's objection to the terrorism enhancement. The district court's comments at sentencing suggest it believed that the mere fact that Arcila Ramirez pled guilty to knowingly providing material support to a known terrorist organization per se satisfied § 3A1.4's "calculated" or specific intent requirement. In any event, the district court made no fact findings as to the § 3A1.4 enhancement.

After denying Arcila Ramirez's requests for either a downward departure or a variance, the district court heard Arcila

Ramirez's allocution.  Arcila Ramirez maintained that he had no nexus to terrorism, was not opposed to any government politically, and was not a religious extremist.  Ultimately, the district court sentenced Arcila Ramirez to 240 months' imprisonment.  Arcila Ramirez timely appealed.

## II.  DISCUSSION

Arcila Ramirez challenges the district court's application of the terrorism enhancement under U.S.S.G. § 3A1.4(a).[4]

### A.  Section 3A1.4(a)

Section 3A1.4(a) provides that the terrorism enhancement applies if the defendant's "offense is a felony that involved, or was intended to promote, a federal crime of terrorism."  U.S.S.G. § 3A1.4(a).  The structure of § 3A1.4 establishes two separate bases for applying the enhancement: (1) when the defendant's offense "involved" a federal terrorism crime; or alternatively, (2) when his offense was "intended to promote" a federal terrorism crime.

On appeal, the government relies on only the "involved" prong of § 3A1.4(a) and not its "intended to promote" prong.  Our inquiry thus becomes whether Arcila Ramirez's offense "involved . . . a federal crime of terrorism."  For this case, the key terms are "involved" and "a federal crime of terrorism."

---

[4] We review "the district court's interpretation and application of the Sentencing Guidelines *de novo* and its underlying factual findings for clear error." *United States v. Jayyousi*, 657 F.3d 1085, 1114 (11th Cir. 2011).

20-10564            Opinion of the Court              12

## B. "Involved"

This Court already has concluded that the term "involved" in this guideline "means to 'include.'" *United States v. Mandhai*, 375 F.3d 1243, 1247-48 (11th Cir. 2004) (citing *United States v. Graham*, 275 F.3d 490, 516 (6th Cir. 2001)); *see also United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005) ("The ordinary and plain meaning of 'involved' means 'to include.'") (citing *Random House Webster's College Dictionary* 1042 (2d ed. 1997)). As the Fifth Circuit explained, an offense "involved" a federal crime of terrorism if the crime of conviction itself is a federal crime of terrorism or if the relevant conduct includes such a crime. *United States v. Fidse*, 862 F.3d 516, 522 (5th Cir. 2017).

Similarly, the Second Circuit concluded that "a defendant's offense 'involves' a federal crime of terrorism when his offense includes such a crime, *i.e.*, the defendant committed, attempted, or conspired to commit a federal crime of terrorism . . . or his relevant conduct includes such a crime." *United States v. Awan*, 607 F.3d 306, 313-14 (2d Cir. 2010); *see also United States v. Wright*, 747 F.3d 399, 407 (6th Cir. 2014) (stating "the terrorism enhancement can be applied to inchoate offenses, such as attempt and conspiracy"); *Graham*, 275 F.3d at 516 (same).[5]

---

[5] In addition to the Second and Fifth Circuits, the Fourth, Sixth, and Seventh Circuits have also concluded that the "involved" prong of § 3A1.4 requires that the defendant's offense of conviction or relevant conduct "include" a federal crime of terrorism, as defined in 18 U.S.C. § 2332b(g)(5). *See United States v.*

### C. "Federal Crime of Terrorism" Defined in § 2332b(g)(5)

As to the other key term, the application notes to § 3A1.4(a) state that "[f]or purposes of this guideline, *federal crime of terrorism*' has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." U.S.S.G. § 3A1.4 cmt. n.1. In turn, the § 2332b(g)(5) statute provides that a "[f]ederal crime of terrorism" means "an offense that":

(1) "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," *and*

(2) "is a violation of" one of the criminal statutes listed in § 2332b(g)(5)(B).

18 U.S.C. § 2332b(g)(5)(A)-(B).   This definition is written in the conjunctive, and both prongs must be satisfied. *Fidse*, 862 F.3d at 524 & n.6; *Graham*, 275 F.3d at 514.

Arcila Ramirez's statute of conviction, 18 U.S.C. § 2339B, is one of the listed statutes.  So, under the "involved" prong of U.S.S.G. § 3A1.4, the issue becomes whether Arcila Ramirez's offense or relevant conduct was "calculated" to influence, affect, or retaliate against government conduct.

---

*Kobito*, 994 F.3d 696, 702 (4th Cir. 2021); *Arnaout*, 431 F.3d at 1001; *Graham*, 275 F.3d at 516.

## D.  Eleventh Circuit Precedent

Our Court has affirmed U.S.S.G. § 3A1.4(a) terrorism enhancements in two decisions that we now outline.  *See United States v. Mandhai*, 375 F.3d 1243 (11th Cir. 2004); *United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011).

### 1.  *Mandhai* in 2004

In *Mandhai*, the defendant met two individuals who expressed a desire to "wage jihad in Florida."  375 F.3d at 1245-46.  Both men secretly were cooperating with the FBI.  *Id.*  The defendant asked the FBI informants for financial support and help with his plot to bomb electrical transformers in Florida "in retaliation for the U.S. government's support of Israel and other countries that oppress Muslims."  *Id.* at 1246.  The defendant spoke at a meeting to recruit men for "jihad training," and asked one FBI informant to obtain bombs so he could complete his plan.  *Id.*  After arrest, the defendant confessed that he was planning to blow up electrical sites and demand the release of Muslim prisoners and changes in the United States' policy in the Middle East.  *Id.*

The defendant pled guilty to conspiring to destroy buildings affecting interstate commerce by means of fire and explosives, in violation of 18 U.S.C. § 844(n).[6]  *Id.* at 1245, 1247.  The sentencing court applied § 3A1.4's terrorism enhancement.  *Id.* at 1247.

---

[6] Section 844(i) makes it a crime to "maliciously damage[] or destroy[], or attempt[] to damage or destroy, by means of fire or an explosive, any building,

On appeal, the defendant contended that his conspiracy offense did not constitute a "federal crime of terrorism" as defined by 18 U.S.C. § 2332b(g)(5). *Id.* The defendant argued that the object of his conspiracy—destroying buildings by fire or explosives under 18 U.S.C. § 844(i)—was a listed "federal crime of terrorism" in § 2332b(g)(5)(B), but conspiracy to do so under § 844(n) was not listed. *Id.* Rejecting that argument, this Court pointed out that "[h]ad the Guideline drafters intended that § 3A1.4 apply only where the defendant is convicted of a crime listed in 18 U.S.C. § 2332b(g)(5)(B), they would have included such limiting language." *Id.* Instead, the § 3A1.4 guideline "cast a broader net by applying the enhancement to any offense that 'involved' or was 'intended to promote' a terrorism crime." *Id.*

Under *Mandhai*, a defendant need not be convicted of a federal crime listed in § 2332b(g)(5)(B). *See id.* It is sufficient if the defendant's offense conduct "involved" or "intended to promote" a federal crime of terrorism listed in § 2332b(g)(5)(B). *Id.* And "intended to promote" means that "a goal or purpose was to bring or help [others] bring into being a crime listed in 18 U.S.C. § 2332b(g)(5)(B)." *Id.* at 1248 (citing *Graham*, 275 F.3d at 516-18).[7]

---

vehicle, or other real or personal property . . . ." 18 U.S.C. § 844(i). Section 844(n) makes it a crime to conspire to commit a § 844(i) offense. *Id.* § 844(n).

[7] The Second Circuit also has concluded that the "intended to promote" prong applies to defendants who "clearly 'intend to promote' federal crimes of terrorism committed by *other persons.*" *Awan*, 607 F.3d at 315. Thus, "even if [the defendant's] crimes of conviction and relevant conduct did not satisfy

The *Mandhai* Court also discussed the first prong of the definition of a "federal crime of terrorism," which is an offense "calculated to influence or affect the conduct of government by intimidation or coercion or to retaliate against government conduct." *Id.* Our Court concluded there was substantial evidence supporting the district court's fact finding that the object of Mandhai's crime—destroying buildings by fire or explosives—was to influence or affect government conduct, or to retaliate against past government action. *Id.* We emphasized that "the terrorism enhancement does not hinge upon a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation." *Id.* Rather, the terrorism enhancement applied "even though the record reflects that Mandhai lacked both the means and the ability to carry out" the planned bombing without help "that was not present." *Id.*

### 2. *Jayyousi* in 2011

In *Jayyousi*, the defendants were convicted of: (1) conspiring in the United States to murder, kidnap, or maim persons overseas, in violation of 18 U.S.C. § 956(a)(1); (2) conspiring to provide material support, knowing or intending that they would be used in carrying out a conspiracy to murder, kidnap, or maim overseas, in

---

the calculation requirement for a federal crime of terrorism," the enhancement will still apply if the government can prove that the defendant's crimes or relevant conduct "were intended to promote a federal crime of terrorism committed or to be committed by other individuals." *Id.*

violation of 18 U.S.C. §§ 371 and 2339A; and (3) a substantive 18 U.S.C. § 2339A offense. 657 F.3d at 1091-92. The trial evidence showed that the defendants, while ostensibly engaged in charitable fundraising in a Muslim community in Florida, were, in fact, operating a "support cell" that sent funds, recruits, and equipment overseas to terrorist groups seeking to create Islamic states through violent jihad against secular governments. *Id.* at 1092-1101.

On appeal, two defendants challenged the district court's application of U.S.S.G. § 3A1.4's terrorism enhancement. *Id.* at 1114. The district court examined both prongs of § 2332b(g)(5)'s definition of a "federal crime of terrorism." *Id.* at 1114-15. It determined that the defendants' crimes were listed in § 2332b(g)(5)(B). *Id.* at 1115.

The district court then explicitly found that "the defendants' activities were calculated to influence, affect, or retaliate against government conduct." *Id.* at 1114. As to this fact finding, ample trial evidence established that the defendants "wished to impose Sharia throughout the Middle East and remove government in the process." *Id.* at 1115. The district court reasoned (1) that the indictment charged that the object of the conspiracy was to advance violent jihad and to commit acts of murder and maiming for the purpose of opposing existing governments, and (2) thus there was (within the jury's verdict) "a finding that the defendants' actions were intended to bring about the downfall of governments that were not Islamic or not Islamic enough." *Id.* at 1114-15.

On appeal, the defendants argued that "their benign motive" was to "assist[] the oppressed Muslims" in other countries with humanitarian aid and therefore their conduct "was not calculated to influence or affect the conduct of any [foreign] government." *Id.* at 1114.

This Court affirmed the terrorism enhancement. *Id.* at 1115. As to § 2332b(g)(5)(A)'s requirement that the defendants' offenses be "calculated" to influence or affect government conduct, "[t]he record demonstrate[d] that the defendants' support activities were intended to displace 'infidel' governments that opposed radical Islamist goals." *Id.* The trial evidence included the defendants' statements "about their desire to impose Sharia, toppling existing governments in the process." *Id.* This Court emphasized that "what the [defendants'] activity was calculated to accomplish" was relevant, not "the defendants' claimed motivation behind it . . . ." *Id.* The defendants' personal motive "is simply not relevant." *Id.* (quoting *Awan*, 607 F.3d at 317).

### E. Meaning of "Calculated," a Statutory Term

With this background, we examine whether Arcila Ramirez's 18 U.S.C. § 2339B material support offense is a "federal crime of terrorism" as defined by 18 U.S.C. § 2332b(g)(5). As noted earlier, his § 2339B offense is a listed crime. *See* 18 U.S.C. § 2332b(g)(5)(B)(i). The only issue is whether Arcila Ramirez's offense was "calculated" to influence, affect, or retaliate against government conduct.

20-10564                Opinion of the Court                19

We begin with the statutory term "calculated." *See* 18 U.S.C. § 2332b(g)(5)(A). The ordinary and plain meaning of "calculated" is planned to accomplish a purpose or intended. *See Calculated, Merriam-Webster Online Dictionary*, https://merriam-webster.com/dictionary/calculated (last visited Oct. 21, 2021) ("Planned or contrived to accomplish a purpose; Deliberate, intended."); *Calculated, Black's Law Dictionary* (11th ed. 2019) ("Planned so as to achieve a specific purpose; deliberate."); *Calculate, Oxford English Dictionary* (2d ed. 1989) ("To plan or devise with forethought; to think out; to frame."). "[C]alculated" means "planned—for whatever reason or motive—to achieve the stated object." *Awan*, 607 F.3d at 317. "'Calculation' is concerned with the object that the [defendant] seeks to achieve through planning or contrivance." *Id.* (citing *Calculated, Webster's Third New International Dictionary Unabridged* 315 (1986)).

Other circuits have read the phrase "calculated to" as creating something akin to, or closely resembling, "a specific intent" requirement. *See United States v. Alhaggagi*, 978 F.3d 693, 699-700 (9th Cir. 2020); *United States v. Ansberry*, 976 F.3d 1108, 1127-28 (10th Cir. 2020); *United States v. Mohamed*, 757 F.3d 757, 759-60 (8th Cir. 2014); *United States v. Wright*, 747 F.3d 399, 408-09 (6th Cir. 2014); *United States v. Hassan*, 742 F.3d 104, 148 (4th Cir. 2014); *Awan*, 607 F.3d at 317.

The Second Circuit's *Awan* decision discussed at length the "calculated" term and is instructive.

Defendant Awan was convicted of, *inter alia*, conspiring to provide, and providing, material support (funds) to the KCF, a Sikh terrorist organization in India, in violation of 18 U.S.C. § 2339A. *Awan*, 607 F.3d at 309-10.  The district court found that there was insufficient evidence that the defendant's conduct was "calculated" to influence or affect the conduct of government or to retaliate against government conduct under § 2332b(g)(5)(A).  *Id.* at 312, 316.  The district court reasoned that it would be "speculative to conclude that the defendant . . . was motivated by a desire to influence the policies of the Indian government or retaliate for some unspecified wrong."  *Id.* at 316.  Instead, the district court made a fact finding that the defendant's motive in providing the funds to the KCF was "the prestige or potential influence he obtained by associating with [the KCF's leader] and with the Pakistani intelligence services."  *Id.*

In vacating the denial of the terrorism enhancement, the Second Circuit held, *inter alia*, that § 2332b(g)(5) does *not* require the government to prove the defendant's motive for committing the crime of conviction.  *Id.* at 313.  The Second Circuit explained that the word "'[c]alculation' is concerned with the object the actor seeks to achieve through planning and contrivance," rather than with the actor's particular motive.  *Id.* at 317.  The proper focus of the "calculation element" of § 2332b(g)(5)(A) is not "on the defendant but on his 'offense,' asking whether it was 'calculated,' i.e., planned—for whatever reason or motive—to achieve the stated object."  *Id.*  The Second Circuit explained that "a person

may intend and may commit an offense that is so calculated even if influencing or retaliating against government is not his personal motivation." *Id.*

As to Awan's offense, the Second Circuit observed that "there [was] little doubt that Awan (1) knew that the objective of [the KCF's leader] and the KCF was to influence the Indian government through violence, and (2) knew that the money he provided to the KCF would be used toward that end." *Id.* The Second Circuit acknowledged that Awan "may have been motivated, as the district court found, by a desire for . . . prestige and potential influence." *Id.* It concluded, however, that "the government could still prove that Awan's offenses themselves were calculated to influence . . . the conduct of government . . . even if [Awan] lacked a specific political motive for committing them." *Id.* (quotation marks omitted).

Without deciding the issue, the Second Circuit indicated that "if the evidence showed that Awan engaged in criminal conduct with knowledge that confederates solicited his actions to effectuate politically motivated bombings in India, or homicidal attacks on the country's security forces or its political leaders, such proof could demonstrate that Awan's crimes were calculated to influence the conduct of government even if he was not personally motivated by that object." *Id.* at 317-18. The Second Circuit remanded for the district court to reconsider whether the evidence supported the terrorism enhancement. *Id.* at 318. With this background, we turn to Arcila Ramirez's case.

We agree with *Awan* and our other sister circuits that "calculated" imposes an intent requirement. For U.S.S.G. § 3A1.4 to apply, the government must satisfy the "calculated" prong of § 2332b(g)(5)(A). To do that, the government must show that the defendant's offense was planned to influence, affect, or retaliate against government conduct, even if that was not the defendant's personal motive.

## F. Analysis of Arcila Ramirez's Terrorism Enhancement

As noted earlier, the district court here made no fact findings as to the § 3A1.4 enhancement. Rather, the district court appeared to believe the mere fact that Arcila Ramirez had pled guilty to knowingly providing material support to a known foreign terrorist organization per se triggered the terrorism enhancement.

It bears repeating that Arcila Ramirez's § 2339B(a)(1) offense—providing material support to a foreign terrorist organization—requires that he know that the ELN is a designated foreign terrorist organization and that the ELN has engaged in or engages in terrorism or terrorist activity. *See* 18 U.S.C. § 2339B(a)(1). But § 2339B(a)(1) does not contain the additional requirement found in § 2332b(g)(5)(A) that the defendant's offense be "calculated" (i.e., planned or intended) to influence, affect, or retaliate against government conduct. Rather, it is only the definition of a "federal crime of terrorism" in § 2332b(g)(5)(A) that requires the defendant's offense be so "calculated."

To assume an offense listed in § 2332b(g)(5)(B) is per se a "federal crime of terrorism" without a separate finding as to "calculated" would render the "calculated" requirement in § 2332b(g)(5)(A) superfluous. *Fidse*, 862 F.3d at 524; *United States v. Chandia*, 514 F.3d 365, 376 (4th Cir. 2008) (vacating and remanding because the district court "did not make any factual findings related to the intent [i.e., calculation] element.").

To be sure, whether a defendant's offense is calculated (i.e., intended) to influence, affect, or retaliate against government conduct is a highly fact specific inquiry that requires examining the record as a whole. Sometimes, as in *Jayyousi* and *Mandhai*, the record will contain statements by the defendant expressing an intent to influence, affect, or retaliate against government conduct. *See Jayyousi*, 657 F.3d at 1115; *Mandhai*, 375 F.3d at 1246. However, because a defendant often will not admit his full knowledge or intentions, the district court may find the requisite calculation or intent existed based on circumstantial evidence and reasonable inferences drawn from the facts. As the Second Circuit emphasized, a defendant's knowledge that a terrorist organization solicited his actions to attack the government could demonstrate that a defendant's crimes were calculated to influence government conduct, even if the defendant was not personally motivated by the organization's object. *See Awan*, 607 F.3d at 317-18. Personal motive is not relevant. *Jayyousi*, 657 F.3d at 1115; *Awan*, 607 F.3d at 317.

Here though, with no "calculated" or specific intent finding at all, the district court erred in applying § 3A1.4's terrorism enhancement.[8] We express no opinion as to whether the factual proffer and any other record evidence were sufficient for the district court to draw any particular inferences here. Rather, the error is that the district court made no fact findings at all.[9]

### III. CONCLUSION

For the foregoing reasons, we vacate Arcila Ramirez's sentence and remand for resentencing and fact findings.[10]

_____

[8] For the first time in his reply brief, Arcila Ramirez contends the government must prove that the terrorism enhancement applies by clear and convincing evidence. However, our circuit's settled law is that the preponderance of the evidence standard is sufficient to establish the predicate facts for a sentencing adjustment or enhancement. *See, e.g.*, *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005); *United States v. Whitesell*, 314 F.3d 1251, 1255 (11th Cir. 2002).

[9] In cases under the "involved" prong, sometimes the offense conduct alone will be sufficient evidence to support a "calculated" fact finding. Sometimes not, requiring additional evidence. In either event, given the terrorism enhancement's large impact on both the offense level and criminal history category, the district court should make an express fact finding as to the "calculated" requirement. Because our Court had not until now clarified that point, we remand for a full resentencing that permits the parties to present additional evidence and argument.

[10] Because we vacate Arcila Ramirez's sentence and remand for a full resentencing, we do not address his remaining arguments that the district court should have either departed downward under *United States v.*

**VACATED AND REMANDED.**

---

*Rodriguez*, 64 F.3d 638 (11th Cir. 1995), or varied downward based on the 18 U.S.C. § 3553(a) factors.