[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11190

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

FRANCISCO JOSEPH ARCILA RAMIREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20036-JEM-1

_____

Before JORDAN, BRANCH, and ED CARNES, Circuit Judges.

PER CURIAM:

Francisco Arcila Ramirez pleaded guilty to one count of providing material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1). The district court sentenced him to 240 months imprisonment. He contends that the court did not make sufficient factual findings to support a 12-level terrorism enhancement under U.S.S.G. § 3A1.4(a). He also contends that his sentence is procedurally and substantively unreasonable.

## I.

The § 3A1.4(a) terrorism enhancement provides for a 12-level increase to a defendant's offense level if he committed a felony "that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). A "federal crime of terrorism" is defined by the "meaning given that term in 18 U.S.C. § 2332b(g)(5)." U.S.S.G. § 3A1.4 cmt. n.1. That statute in turn provides a two-part definition. *See* 18 U.S.C. § 2332b(g)(5)(A)–(B). First, a federal crime of terrorism is "an offense that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). Second, the offense must be a violation of a specific federal criminal statute listed in 18 U.S.C. § 2332b(g)(5)(B). *Id.* § 2332b(g)(5)(B). That list includes the material support statute,

§ 2339B, which is the one that Arcila Ramirez was convicted of violating. *Id.* That means the second requirement is met.

The issue Arcila Ramirez raises is whether the evidence supported the district court's finding that his offense met the first requirement, that it was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). We review *de novo* a district court's interpretation and application of the sentencing guidelines but review its factual findings only for clear error. *United States v. Jayyousi*, 657 F.3d 1085, 1114 (11th Cir. 2011).

## A.

This is the second time we have considered Arcila Ramirez's challenge to the terrorism enhancement part of his sentence. The first time, in *United States v. Ramirez*, 16 F.4th 844 (11th Cir. 2021), we clarified that the word "calculated" in § 2332b(g)(5)(A) means that there is "an intent requirement" which must be met for the terrorism enhancement to apply. *Id.* at 854. To meet that requirement, "the government must show that the defendant's *offense* was planned to influence, affect, or retaliate against government conduct, *even if that was not the defendant's personal motive.*" *Id.* (emphasis added). The enhancement applies if the government makes that showing by a preponderance of the evidence, *id.* at 855 n.8, and "because a defendant often will not admit his full knowledge or intentions, the district court may find the requisite calculation or intent existed based on circumstantial evidence and reasonable inferences drawn from the facts," *id.* at 854.

During Arcila Ramirez's first sentence proceeding, the district court "made no fact findings" about whether his offense conduct met the intent requirement, so we remanded for the court to "make an express fact finding" about it. *See id.* at 854, 855. The parties were permitted to present additional evidence and argument, but we expressed no opinion about whether their stipulated factual proffer and other record evidence from the initial sentence proceeding were enough for the district court to draw "any particular inferences" about the sentence enhancement. *See id.* at 848, 855.

### B.

On remand, Arcila Ramirez filed a sentencing memorandum contending that the terrorism enhancement did not apply to him because he lacked the necessary specific intent, even though he knew the ELN was a terrorist organization. He pointed out that the ELN also trafficked drugs, and for all he knew, they might have bought the weapons to further their drug trade instead of to further their plans to overthrow the Colombian government.

The government responded that Arcila Ramirez's personal motivation did not matter, and the undisputed facts established that he intended to sell weapons to the ELN, a group he knew to be a terrorist organization that aimed to overthrow the government of Colombia. The government pointed out that Arcila Ramirez "was not ELN's Amazon, supplying them with anything and everything under the sun." Instead, he sold them the particular weapons that they wanted — high-powered firearms with high-

capacity magazines.  And he intended to serve as a pipeline to the ELN for firearms and firearms parts that could be converted into AR-15s and AKs.  The government filed exhibits, including reports and agency findings about the ELN, along with a log listing weapons that Ramirez or his straw purchasers had bought.

At his re-sentence hearing, Arcila Ramirez again contended that the government had not satisfied the calculation requirement for the terrorism enhancement because it had not proven his specific intent.  He reiterated that the ELN did not confine itself to terrorist activities; it also trafficked drugs and engaged in other illegal activities.  He emphasized that, although he had purchased the weapons for resale to the ELN, he was not affiliated with the terrorists, he sold the weapons through a broker, and he was "a businessman."

The government responded with additional evidence showing that: the ELN's goal is to overthrow the Colombian government; the ELN uses its drug-trafficking proceeds to fund that objective; and it is widely known in Colombia that the ELN engages in terrorism.  The government reminded the court that Arcila Ramirez was born and raised in Colombia, which indicated that he would know about the objectives of the ELN and how the terrorist group pursued its goals.  The government also pointed to a transcript of recorded phone calls between Arcila Ramirez and a confidential source in Colombia, during which they spoke in code about continuing to supply the ELN with firearms.  Based on that evidence, the government argued that it was reasonable to infer that

Arcila Ramirez knew that the firearms he delivered into the hands of the ELN would be used to further its terrorist aims.

In addition to that, the government called as a witness a special agent who had worked in Colombia for more than five years. He testified that it is widely known in Colombia that ELN is a terrorist group. The agent testified: "ELN is not something that's . . . hidden in Colombia. Any normal person, anybody that . . . could breathe knows what ELN does in Colombia. It is a terrorist group that terrorizes the Colombian population, the Colombian police, and now even going after U.S. law enforcement by the things that they do; threats that they put out, so ELN doesn't try to hide itself." He explained that the media often reports about the connection between the ELN's drug trafficking and its acts of terrorism. The ELN is not divided into separate departments: one for drugs and another for terrorism. Instead, "[t]here is one ELN. And that one ELN, their main purpose is to overthrow the Colombian government by any means."

On cross-examination, the agent agreed that ELN is involved in a variety of illegal activities, including trafficking drugs and extorting "taxes" from people, but he emphasized that the profits are used to serve the overarching goal of terrorizing the Colombian government. On redirect the agent testified that the AK-47 style firearms that Ramirez put into the hands of the ELN were the weapon of choice for ELN commanders.

22-11190                Opinion of the Court                7

Considering all the evidence presented along with the facts that were stipulated in the factual proffer in support of Arcila Ramirez's plea agreement, the court made these findings:

> [Arcila Ramirez] admitted knowing that the guns were going to the ELN.  [He] was born in Colombia; and, therefore, more likely than not knows now that, as he knew then, that the ELN's goals are to intimidate, retaliate against, and overthrow the government of Colombia and that ELN did so through violent means.

> And [in] the factual proffer he admits that he knew "that the organization has engaged in or engages in terrorist activity or terrorism."  [Arcila Ramirez] admitted to knowing the ELN was going to use the weapons he smuggled into Colombia to further the organization's narco trafficking efforts, which in turn fund the ELN's acts of specific terrorism toward the government.  [He] uses this fact to argue that because he knows that the guns will be used for narco trafficking purposes, he knew they wouldn't be used to influence or affect the conduct of the government.  I don't think that follows.  I think quite to the contrary.

> [Arcila Ramirez] cannot so easily distinguish between the narco trafficking and its act of terror because it stands to reason that the reason the ELN engages in

narco trafficking is to fund its actions against the gov-
ernment of Colombia.

The court also noted that Arcila Ramirez's firearms transaction was "not a one-time deal" and that he "knew that this support would continue to aid ELN in achieving its overarching goals."

The government asked the court to clarify whether it was making a specific finding that Arcila Ramirez's "offense conduct was calculated to influence, affect, or retaliate against" the conduct of the Colombian government. The court agreed that was correct; it was making that specific finding. It stated that the circumstantial evidence and the factual proffer supported that finding "far beyond a preponderance of the evidence."

## C.

Arcila Ramirez still contends that the district court failed to make the necessary fact findings about his specific intent and whether his offense was "*calculated* to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A) (emphasis added). He argues that without any "thought and judgment," the court "parroted back" the language that the government had "fed" it. He insists that he was interested only in making money, and the record contains no evidence that his actions established the specific intent necessary for the terrorism enhancement to apply.

The record refutes those contentions. Based on the undisputed factual proffer, the court found that Arcila Ramirez knew the

ELN was a terrorist organization whose agenda was to intimidate, retaliate against, and overthrow the government of Colombia. The court also found that Arcila Ramirez knew that the weapons he was smuggling were being used for terrorist activities and would further the ELN's "overarching goals" of overthrowing the Colombian government. In light of that and all the other evidence presented, the court determined that Arcila Ramirez's offense was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). As we have recounted, ample evidence supported the court's finding that under U.S.S.G. § 3A1.4(a) the 12-level terrorism enhancement applied. The court did not err in applying it.

## II.

Arcila Ramirez also contends that his 240-month sentence is procedurally and substantively unreasonable. He argues that U.S.S.G. § 5G1.1(a), under which the statutory maximum for his crime became his advisory guidelines sentence, deprived him of the benefit of accepting responsibility and assisting the government. *See* U.S.S.G. § 3E1.1(a) and (b) (providing a three-level reduction to a defendant's offense level if he "clearly demonstrates acceptance of responsibility for his offense" and certain additional requirements are met). We review for abuse of discretion the procedural and substantive reasonableness of a sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007).

### A.

Arcila Ramirez's guidelines range was 360 months to life, but under U.S.S.G. § 5G1.1(a) the advisory guidelines sentence became the statutory maximum of 240 months. *See* U.S.S.G. 5G1.1 ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."). He argues that the operation of § 5G1.1(a) negated the benefit of the three-level reduction to his offense level that he should have received for accepting responsibility. *See* U.S.S.G. §§ 3E1.1(a) & (b).

He relies on *United States v. Rodriguez*, 64 F.3d 638, 642 (11th Cir. 1995), which is a pre-*Booker* sentencing case, meaning the guidelines at that time were mandatory instead of advisory. *See United States v. Booker*, 543 U.S. 220, 233 (2005). In *Rodriguez* the issue was "[w]hether a district court has the discretion to grant a departure from the sentence prescribed by § 5G1.1(a)." 64 F.3d at 642–42. By contrast, when the district court sentenced Arcila Ramirez in April of 2022, which was in the post-*Booker* era, it was well aware that it had the discretion to calculate a departure or to vary downward from the *advisory* guidelines sentence of 240 months. It chose not to do so.

The government requested the 240-month guidelines sentence. It pointed out that the guidelines sentence was significantly lower than the 360 to life that Arcila Ramirez would have faced if

he had been convicted on the multiple counts charged in the indictment instead of pleading guilty to a single count.[1]

Arcila Ramirez asked the court to consider his acceptance of responsibility and his personal history and characteristics, arguing that a sentence of ten years instead of twenty would be sufficient. He argued that he was a "businessman" who just happened to sell guns instead of cars, and he sold to a lot of different people — the ELN was just one of his clients.

The court found that Arcila Ramirez had already received the benefits of his cooperation with the government in the plea agreement, which resulted in his being convicted of only one count that carried a twenty-year statutory maximum and avoiding the seven other counts in the indictment. Because of the statutory maximum and the operation of U.S.S.G. § 5G1.1(a), his 240-month guidelines range was significantly less than what it would otherwise have been (360 months to life) for his crime. The court stated that it had considered the parties' arguments, the guidelines range, and the 18 U.S.C. § 3553(a) factors, and it found that a 240-month sentence was appropriate under the circumstances.

**B.**

---

[1] Arcila Ramirez was indicted on eight counts and agreed to plead guilty to only one count; the other seven counts were dismissed on the government's motion.

Arcila Ramirez challenges the procedural reasonableness of his sentence. "A sentence may be procedurally unreasonable if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008).

The district court made none of those mistakes in sentencing Arcila Ramirez. Instead, it properly calculated the guidelines range and considered the § 3553(a) factors. *See United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013) (explaining that the district court is not required to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors); *see also Gonzalez*, 550 F.3d at 1324 (explaining that generally "[a]n acknowledgment the district court has considered the defendant's arguments and the § 3553(a) factors will suffice"). Arcila Ramirez's sentence is not procedurally unreasonable.

## C.

Arcila Ramirez also contends that his sentence is substantively unreasonable. A district court imposes a substantively unreasonable sentence when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation

marks omitted). The sentence must be sufficient, but not greater than necessary, to comply with the purposes listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2)(A)–(C).

"[T]he district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of such a variance." *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016). We will vacate on substantive reasonableness grounds only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190. The party challenging the sentence bears the burden of showing that the sentence is unreasonable in light of the record and the § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

The district court did not commit a clear error in judgment in weighing the § 3553(a) factors and sentencing Arcila Ramirez. The court imposed the guidelines sentence of 240 months, and "although we do not automatically presume that a sentence within the guidelines range is reasonable, we ordinarily expect it to be." *United States v. Castaneda*, 997 F.3d 1318, 1332 (11th Cir. 2021). The court considered the arguments on both sides about Arcila Ramirez's history and characteristics and the nature of his crime.

*See* 18 U.S.C. § 3553(a).  It considered the undisputed fact that Arcila Ramirez had knowingly sold weapons to a terrorist group that wants to overthrow the Colombian government.  The court was well within its discretion in denying Arcila Ramirez's request for a downward variance.

**AFFIRMED.**